200 So.2d 67 (1967)
Walter L. GRAVES et al.
v.
TRADERS AND GENERAL INSURANCE COMPANY, Cass Collins and the Travelers Insurance Company.
No. 7050.
Court of Appeal of Louisiana, First Circuit.
May 29, 1967.
Rehearing Denied June 30, 1967.
*68 Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, Roger M. Fritchie, of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellant.
Joseph A. Sims, of Sims & Mack, Hammond, for appellee.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
Defendants, Traders and General Insurance Company (Traders), insurer of a school bus owned by Cass Collins pursuant to a policy containing an "excess insurance clause" as respects operation of non-owned vehicles by its said insured, and The Travelers Insurance Company (Travelers), insurer of a bus owned by Superior Coach Sales, Inc., under a policy containing an omnibus insured provision qualified by an "escape clause", have appealed the judgment of the trial court prorating their liability to plaintiffs, Walter L. Graves and Eula Graves, as the result of injuries received by plaintiffs in an accident in which the bus insured by Travelers and being operated by the employee of Collins, ran into the rear of an automobile owned and operated by plaintiff, Walter L. Graves.
The trial court rendered judgment in favor of plaintiff, Walter L. Graves, in the aggregate of $3,211.90, of which sum $2,500.00 was for personal injury, $500.00 for medical expense incurred by Mr. and Mrs. Graves and $211.90 damages to the Graves automobile. Mrs. Graves was given an award of $2,500.00 for personal injuries. Defendants, Traders and Travelers, were cast in solido for the foregoing awards. Traders' coverage being in limits of $5,000/$10,000/$5,000 and that of Travelers being $100,000/$300,000/$25,000, the trial court prorated the $3,000 awarded Mr. Graves and the $2,500 allotted Mrs. Graves to Traders and Travelers, respectively, in the proportion of 1 to 20, and the additional $211.90 given Mr. Graves in the proportion of 1 to 5. We find that the trial court properly disposed of all facets of this matter.
On appeal Traders and Travelers both concede the negligence of Collins' employee. Travelers maintains it is not liable under its policy, first because the insured vehicle was being used at the time of the accident as a public or livery conveyance which use is expressly excluded from coverage. Alternatively, Travelers contends its policy coverage is rendered inoperable or extinguished by an "escape clause" canceling omnibus insurance in the event other collectible insurance is afforded. In the further alternative, Travelers argues the awards are excessive and should be reduced.
Traders, on the other hand, maintains only that the awards are excessive and should be reduced and prorated between the insurers in the proportion decreed by the trial court.
Considering initially the question of quantum, the record discloses Mr. and Mrs. Graves were 65 and 60 years old, respectively, on the date of the accident, namely, February 8, 1964. Mr. Graves, a retiree for approximately two years preceding the accident, was not hospitalized. He was first seen and treated by his family physician, Dr. George R. Grimes, a general practitioner. Dr. Grimes' examination disclosed Mr. Graves sustained a mild "whiplash" injury and severe lumbosacral or "low back" sprain as a result of the accident. These injuries, according to Dr. Grimes, *69 totally disabled Mr. Graves for a period of approximately four weeks. Dr. Grimes also found that initially noted muscle spasm disappeared within three or four months following the accident. Subsequently, Graves' complaints of pain were found by Dr. Grimes to be purely subjective. In essence Dr. Grimes testified that by August, 1964, all disability resulting to Mr. Graves from the accident had terminated. Although Dr. Grimes was still treating Mr. Graves at the time of trial (two years following the accident), it was his opinion that any present disability to Mr. Graves was the result of an arthritic condition for which he had been treating the patient prior to the accident.
Plaintiff Graves reasserts his claim for lost earnings denied by the trial court. The record discloses that since his retirement prior to the accident, he had not in fact been gainfully employed in any capacity. It is shown that he had intermittently worked at odd jobs but his income from such sources is not shown with any degree of certainty. Most of these jobs were in the form of light work which, according to Dr. Grimes, Mr. Graves should have been able to perform by December, 1964. It further appears that during the summer preceding the accident, Mr. Graves had converted a truck into a "snowball" vending device which he intended to operate and did engage in that activity for a short time.
Nor do we find any merit in the contention Graves should be awarded lost earnings from his purported inability to fulfill a contract with Harry A. Walker as a service-salesman. It appears that Graves resided in a trailer on premises belonging to Walker, who operated a business known as Walker Diesel Service. In exchange for custodial services rendered by Graves, Walker provided the trailer site and furnished certain utilities. It also appears that from time to time Graves assisted Walker in servicing and repairing machinery, which work Walker classified as light. Although Walker and Graves had discussed the latter's employment as a serviceman-salesman at an hourly rate of $2.00, predicated on a 40 hour week, Graves had never seen fit to commence such employment, notwithstanding he could have begun at his election. According to Walker, the work contemplated was not strenuous or particularly arduous. Notwithstanding his ability to undertake such work as early as December, 1964 (according to the testimony of Dr. Grimes), Graves nevertheless had not seen fit to commence such employment at the time of trial.
Nor do we find any basis for increasing the award of $211.90 granted by the trial court for damages to the Graves automobile. Plaintiff attempted to prove damages in the sum of $1,150.00 sustained by his Ford Falcon automobile involved in the collision. It suffices to say the value of the automobile was not proved with that degree of certainty required by law. Damages to the vehicle allowed by the trial court represented the lower of two estimates for repairs produced by plaintiff from reputable repairmen. Under the circumstances, the award of the trial court is found to be correct.
Similarly, we find no ground for increasing the trial court's award of $500.00 to Mr. Graves for past and future medical expense for himself and Mrs. Graves. The testimony shows that whereas since the accident plaintiffs have incurred medical expense in excess of the amount awarded, much of this expense was incurred in the ordinary course of treatment by Dr. Grimes for ailments unrelated to the accident. The trial court was unable to determine precisely what portion thereof was for treatment of accident incurred injuries and, after reading the record, neither can we. Under the circumstances the award of the trial court for this item will be affirmed.
The day following the accident Mrs. Graves visited Dr. Grimes by whom she had been previously treated for colds, arthritis, neuritis and related ailments. Examination *70 resulted in a diagnosis of lumbosacral sprain, whiplash injury of the neck and possible post-traumatic neuritis of the right shoulder and arm accompanied by generalized contusions. X-rays of the spine revealed the possibility of a pinched nerve which prompted Dr. Grimes to call in consultation Dr. Cracraft, an orthopedist. Dr. Cracraft confirmed the absence of fracture and agreed that Mrs. Graves' complaints were attributable to cervical musculature strain and possible mild arthritis of the right acromioclavicular joint. Based on subjective complaints of slight loss of grip strength of the right hand, Dr. Grimes concluded Mrs. Graves had in fact sustained such a loss of use.
Appellants contend the awards for personal injuries should be reduced because the complaints of both Mr. and Mrs. Graves result primarily from their pre-existing arthritis and other ailments. On the other hand, counsel for appellees contends and correctly so that the tort-feasor takes his victims as he finds them and is responsible for aggravation of pre-existing ailments or disabilities. Mire v. St. Paul Mercury Indemnity Co., La.App., 103 So.2d 553.
While we are convinced both plaintiffs have suffered some aggravation of their pre-existing ills (principally arthritis for which both were treated by Dr. Grimes long prior to the accident), nevertheless, Dr. Grimes' testimony shows clearly that within a few months of the accident, all injury or aggravation of pre-existing ailments had ceased and plaintiffs were thereafter treated for infirmities having no relation to their injuries. Under the circumstances we find the awards to both plaintiffs adequately compensate them for injuries sustained as a result of the collision in question.
We next consider Travelers' contention its policy excluded coverage of the vehicle because of its use as a public or livery conveyance at the time of the accident.
The bus involved in the accident was borrowed from Travelers' insured, Superior Coach Sales, Inc., because Collins' own bus was undergoing repair. It is undisputed the bus in question was being used for the purpose of transporting a high school band from one school to another at the time of the collision. Defendant Collins, Traders' insured, is a school teacher and also runs a bus service from Zachary, East Baton Rouge Parish, to Southern University situated in the same parish. Such pursuit would unquestionably be considered the operation of a public livery or conveyance under ordinary circumstances. It is undisputed in the record that on the day of the accident a parade was scheduled to be held in the adjoining Parish of West Baton Rouge in which event numerous high school bands were to participate. Various bus drivers offered their vehicles free of charge to transport bands from East Baton Rouge Parish to Port Allen where the parade was to be staged to insure participation in the parade by an adequate number of bands. Collins requested his driver, Bell, to drive the borrowed vehicle to McKinley High School in Baton Rouge and from said point convey certain band members to Port Allen. The accident occurred while the bus was in route between these points. Collins' uncontroverted testimony is to the effect that he charged no fares to any student and paid his driver no salary for the occasion, it being his (and all other bus owners') intention to furnish their vehicles free of charge as a civic undertaking.
The pertinent portion of Travelers' policy reads as follows: "This policy does not apply under part I * * * (c) * * * (3) while being used by the insured as a public or livery conveyance or for carrying property for a charge. * * *" Travelers contends its omnibus coverage would cover Bell except for this exclusionary clause. Travelers argues that because the bus was being used for the transportation of school children and the driver accepted indiscriminately all children present who wished to make the trip, the bus in question *71 was a public livery or conveyance within the meaning of the term as held in Spears v. Phoenix Insurance Company, La.App., 149 So.2d 118.
We have no quarrel with the Spears decision, supra, in the light of the circumstances involved therein. The cited authority contains the following language with which we are in complete agreement:
"* * * [A]n examination of the law of this state fails to disclose any decision by the Courts of Louisiana defining the term `public or livery conveyance' * * *.
"In 30 A.L.R. (2) 273 is found the following statement relating to the exclusionary clause above quoted:
"`The term "public conveyance" means a vehicle used indiscriminately in conveying the public and not limited to certain persons and particular occasions or governed by special terms. The words "public conveyance" imply the holding out of the vehicle to the general public for carrying passengers for hire. The words "livery conveyance" have about the same meaning.'"
Although we entertain some doubt regarding whether it is necessary to always charge a fare in order to classify the operation of a particular vehicle a public livery or conveyance, it is not necessary to make such determination to dispose of the issue at hand. Travelers' policy contains its own definition of "livery or public conveyance" in the light of which its contention must be decided. Assuming arguendo, the use of the bus in question was that of a public livery or conveyance in the light of the term as commonly and ordinarily applied, nevertheless coverage is not excluded unless the particular use meets the definition of "public livery or conveyance" employed by Travelers. We find that in clear and concise terms Travelers intended to exclude from coverage only such "livery or public conveyance" for which fares are charged. The exclusionary clause relied on so states in unmistakable language. It is settled law that in the interpretation of insurance contracts that if a clause or word is susceptible of more than one interpretation, it is to be construed so as to make the insurer's obligation effective and additionally, that any doubtful language is interpreted against the insurer. Jones v. Standard Life and Accident Insurance Co., La.App., 115 So.2d 630. Since Travelers' clear intent was to exclude livery use only where fares or charges were levied, assuming this particular use constituted a public livery or conveyance within the ordinary meaning of the term, it does not fall within the ambit of the exclusionary clause in question which requires that such use be for monetary consideration. We hold, therefore, the exclusionary clause relied upon by Travelers is inapplicable under the circumstances.
We come now to the admittedly vexatious and troublesome issue posed by the battle of the clauses by which each insurer seeks to evade completely or limit its liability by virtue of certain specific policy terms.
Travelers' policy, a "Garage Liability Policy", besides affording protection to the named insured, in effect extends coverage to any person using an insured vehicle with the permission of the named insured "but only if no other valid and collectible insurance, either primary or excess, * * * is available to such person * * *." (Emphasis supplied by the Court.) Such a provision is generally known as an "escape clause."
The policy issued by Traders stipulates that with respect to a temporary substitute vehicle, the insurance afforded "shall be excess insurance over any other valid and collectible insurance."
Travelers contends the obvious purpose of its escape clause is complete withdrawal of protection from such omnibus insured as are covered by any other policy providing either primary or excess coverage. On this basis it is argued that since Traders' policy grants "excess" insurance protection *72 herein, Travelers' escape clause is thereby effectuated thus relieving Travelers of coverage entirely.
Relying on the decisions of our brothers of the Third Circuit in Lincombe v. State Farm Mutual Automobile Insurance Company, La.App., 166 So.2d 920, and State Farm Mutual Automobile Insurance Company v. The Travelers Insurance Company, La.App., 184 So.2d 750, Traders argues it is now settled jurisprudence that in such circumstances the respective "excess" and "escape" clauses are considered mutually repugnant and consequently reciprocally ineffective on which basis the loss is to be prorated between the two insurers.
Thus we are here confronted with a case of double coverage and the attendant task of determining whether either, both or neither insurer should be held liable for the loss and if both, in what proportion?
The problems encountered in such a situation are very graphically and scholarly set forth in an article appearing in 38 Minnesota Law Review, at page 838, entitled "Automobile Liability InsuranceEffect of Double Coverage and `Other Insurance' Clauses". Recognizing our inability to improve upon the format of the cited law review article and wishing to acknowledge our indebtedness to its author for a most thorough treatment of a difficult legal question, we quote therefrom with approbation as follows:
"Double coverage arises in countless situations, typically where an insured driver uses, with permission, a car or truck belonging to an insured owner. Present an `omnibus' clause in the owner's policy and a `drive-other-car' clause in the driver's policy, the driver would be covered by both policiesthe most common example of double coverage today. Other instances of concurrent coverage include the presence of: an employer's contingent policy, indemnifying the employer for liability incurred through an employee's negligence, and the employee's own `omnibus' clause which covers his employer an `omnibus' clause, where the additional insured is also covered by a hired car endorsement, or `substitute car' provision, or a contractor's public liability policy, or non-ownership `blanket' policy, or `named operators'' policy, or employer's liability insurance; two policies of the same type, both issued to the same named insured through oversight or error in ascertaining the expiration and effective dates of the policies; a `fleet' or blanket coverage of many cars or trucks, and single coverage on one truck; a general public liability insurance policy and automobile coverage. Innumerable other combinations can give rise to double coverage as well.
"Because a problem as to extent of payment arises from the fact that a potential defendant in an automobile negligence suit is indemnifiable by two insurers instead of one, the insurance companies have attempted evasion of their obligation of payment on the ground that the presence of another insurer in the case releases them from their primary obligations. The insurance companies, patterning their forms on the basis of their property insurance experience, have universally inserted `other insurance' clauses in their liability policies which would effect their partial or total escape.
* * * * * *
"In the modern automobile liability policy, the `other insurance' clauses assume three general forms: (1) the escape clause, whereby the policy is declared not to cover the insured in this double coverage situation; (2) the excess clause, whereby the insurer declares itself liable up to the limits of its policy only for that excess amount of the judgment necessary to completely indemnify the insured after the other insurer has paid to the full limit of its coverage; (3) the pro-rata clause, whereby the insurer obligates itself for a ratable share of the loss in the same proportion which the limit of its own policy coverage bears to the aggregate total coverage protecting the insured.

*73 "Usually a policy will contain more than one of these clauses, each being utilized for different features of the coverage. For example, while pro-rata coverage in case of other insurance might be provided generally by the policy, a `non-ownership' clause might provide for excess coverage only, or the named insured could be protected by pro-rata coverage while an additional insured under the `omnibus' clause purportedly would not be protected at all by virtue of an escape clause applicable to such additional insureds in concurrent coverage situations.
"Despite efforts by insurance counsel to draft explicit and litigation-proof terms in liability policies, especially in the `other insurance' area, litigation is all too frequently necessary to determine to what extent, if at all, each insurer must contribute in a double coverage case. The cause of litigation is not so often the ambiguity of the drafted policy in reference to the existence of other insurance as the conflicting clauses of the two applicable policies. Judicial interpretation of the conflicting clauses has not been uniform enough as yet to allow safe prediction of a certain result. Not only have interpretations of the `other insurance' clauses not been standard, but also the courts are not in agreement as to whether the `other insurance' clauses ought to be the only controlling factors involved.
"The main approaches used by the courts to resolve the problem of the conflicting `other insurance' clauses are four in number. They include: (1) holding the more specific insurer liable to the exclusion of the more general insurer; (2) holding the insurer of the primary tortfeasor primarily liable; (3) applying the `other insurance' clause contained in that policy issued subsequent to the other policy, and (4) interpreting the clauses of the respective policies.

"I. SPECIFIC AND GENERAL COVERAGE
The courts may determine the extent of liability of two concurrent liability insurers by assuming that they are in fact not double insurers at all because of the more specific coverage provided by one. The latter is deemed the primary insurer and the other insurance is secondary only.
* * * * * *
"To determine which is the more specific insurer is to ignore the `other insurance' clauses of the respective policies and avoid the difficulties in attempting to reconcile them. However, the existence of an `other insurance' clause in one policy, which does affect the coverage provided by that policy, has some influence in determining the extent of ultimate liability. While the decisions thus far have established a line of authority that the `general' insurer is an excess insurer only, such has happened only in accord with the `other insurance' clause in the `general' policy. Thus, if instead of containing an escape clause, a secondary policy contained a pro-rata or an excess clause, a court likely would enforce that clause, with the primary-secondary dichotomy becoming a means to that end.
"However, the principle that the `specific' insurer should bear a primary burden has been largely repudiated in the auto liability field. Courts, faced with situations such as a party's double coverage under `drive-other-car' and `omnibus' clauses, double protection as a named insured under a `use of truck' policy and additional insured under a `non-owned truck' policy, and the combination of general comprehensive automobile liability coverage and a policy limited to bodily injury coverage have regarded these as equally `specific' in their coverage. Courts have so held despite the presence of `other insurance' clauses, as where excess and escape, excess and excess, and pro-rata and pro-rata clauses *74 have conflicted, and have resorted to other approaches, rather than to a determination of who is the `specific' insurer, in order to ascertain the extent of liability."
There next follows a discussion of that line of jurisprudence which holds the primary insurer to be insurer of the primary tort-feasor. The author then considers those cases which hold the conflict is determined upon the prior in time policy theory, both of which discussions we exclude; the first being self-explanatory and the latter having originated in property insurance cases, appears to have been either ignored or generally repudiated in the field of automobile liability insurance.
The article then continues:
"Most courts resolve the problem of double coverage by looking to the `other insurance' clauses in an attempt to reconcile the conflicting clauses.
The escape clause has always been held valid and effective where one policy contains the form of `other insurance' provision and the other policy does not provide in any way for other insurance. The insurer, protected by an escape clause, is totally exempted from liability. This is true whether in a suit for declaratory judgment between insurers or in a suit by the injured party against the insurer of the tortfeasor, and whether the other insurance provided automobile or general public liability coverage.
The excess clause has likewise been held valid and effective where the other policy contains no applicable `other insurance' clause, thus rendering the excess insurer liable only for the excess, if any, of the loss uncovered by the limits of the other policy. The manner in which double coverage comes about has no effect. The result would be the same in the common circumstance where the `drive-other-car' provision is governed by an excess clause, and the `omnibus' clause of the other policy is controlled by no `other insurance' clause, as well as in various other circumstances.
The pro-rata clause, in the rare instance when it has been the only `other insurance' clause present in a double coverage situation, has been given effect. The end result is to make both insurers proportionately liable, each for its own share, and each paying in accord with its policy limits. The pro-rata insurer is liable only for that ratable share when sued by its insured for indemnification as well as when both insurers are involved in a suit for contribution."
In Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P.2d 110, 346 P.2d 643, 76 A.L.R.2d 485, the Supreme Court of Oregon was confronted with a "pro rata clause" as opposed to an "excess clause" contained in two policies, one issued to the lessor and the other to the lessee of a single vehicle, a truck. While this case deals with a factually inapposite situation, its discussion of the principles involved and results reached in the various ramifications of the field of double coverage is most enlightening and persuasive.
As in the Lamb-Weston case, supra, the wording of the policies involved herein is such that but for the existence of the other policy each insurer would be primarily liable for plaintiffs' loss. The Court then stated the problem thusly:
"It is, therefore, at once apparent from a consideration of the above policy provisions that each company by its `other insurance' clause seeks to limit its liability if other insurance is available to pay a part or all of an insured's loss. This is demonstrated by the fact that St. Paul provides that its policy can only be treated as `excess insurance over and above' other `valid and collectible insurance,' and the Oregon policy can be treated only as paying a proportionate share if there is other `valid and collectible insurance' against such loss.

*75 "It is also clear that as between the companies themselves no determination of whether or not there is other valid and collectible insurance can be established without first deciding which company is primarily and which secondarily liable, for St. Paul says it will pay only the excess after the limits of the Oregon policy are exhausted, and Oregon says, since there is other insurance, it will pay only a proportionate share of the loss.
"Thus, in such a situation, the court is faced with determining which company shall be considered primarily liable, or treating the `other insurance' clause in each insurer's policy as so repugnant that they must both be ignored, * * *."
Following a painstaking review of all lines of jurisprudence on the subject matter, the court concluded none were logically acceptable because any attempt to give effect to the "other insurance" clause in one policy while simultaneously rejecting a similar provision in the other was the equivalent of pursuing a "will o' the wisp." The Oregon court then quoted the following from Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., 9 Cir., 195 F.2d 958, 959, which in our judgment, as well as that of the Oregon Court, points up the fallacy involved where one such provision is accepted and the other ignored:
"`We have examined cases in other jurisdictions cited by counsel where closely similar or substantially identical disputes between insurance companies have arisen. These decisions point in all directions. One group indicates that the policy using the word "excess" is secondary and that containing the language of the Oregon policy is primary. Examples of these decisions are cited on the margin. Their reasoning appears to us completely circular, depending, as it were, on which policy one happens to read first. Other cases seem to recognize the truth of the matter, namely, that the problem is little different from that involved in deciding which came first, the hen or the egg. See remark of Judge Major in Zurich General Accident & Liability Insurance Co. v. Clamor, 7 Cir., 124 F.2d 717, 719. In this dilemma courts have seized upon some relatively arbitrary circumstances to decide which insurer must assume primary responsibility. Thus one group of cases fixes primary liability on the policy which is prior in date. Another group undertakes to decide which policy is the more specific, holding the one thought more specific to be primary. Another solution is represented by Maryland Casualty Co. v. Bankers Indemnity Ins. Co., 51 Ohio App. 323, 200 N.E. 849, where it was held that the policy issued to the person primarily liable for the damage is the primary insurance. In sum, the cases are irreconcilable in respect both of approach and result.'"
After considering in detail numerous recent decisions wherein liability was prorated between insurers under circumstances analogous or similar to those in the instant case, the Oregon court held:
"We are of the opinion that in these later cases the courts have placed this problem in its true perspective by recognizing the absurdity of attempting to assume that where conflicting `other insurance' provisions exist by reason of overlapping coverages of the same occurrence the provisions of one policy must yield to the provisions of the other.
It may be contended with some slight basis in reason, since the Oregon clause provides for prorating in proportion to the amount of valid insurance then in effect, its liability should be limited in that proportion. Thus, it would pay its prorata share upon that basis as `other valid and collectible insurance' and St. Paul would pay the balance under its excess clause. In this manner some effect is given to the `other insurance' clause of each policy.
Such a contention leads, however, to a return to the circular reasoning necessary to establish primary and secondary liability, *76 for to sustain this contention such proration can only be given effect by determining the company carrying such `other insurance' clause is a primary insurer with limited liability.
Of course, no difficulty is encountered in reaching a just result under such reasoning if the prorata clause in a policy expresses equal liability with that of another insurer, and, while such a result may be just, we do not believe it can be sustained upon sound reasoning.
The `other insurance' clauses of all policies are but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an "escape clause") or that used by St. Paul (usually referred to as an "excess clause") or that used by Oregon (usually referred to as a "prorata clause"). In our opinion, whether one policy uses one clause or another, when any come in conflict with the `other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto. See Minnesota Law Review, supra."
After so concluding the court prorated liability equally between the insurers but upon rehearing effectuated the pro rata clause contained in the policy issued by defendant's insurer.
The precise issue involved herein has on two occasions been considered by our brothers of the Third Circuit. See Lincombe v. State Farm Mutual Automobile Insurance Company, La.App., 166 So.2d 920 (Lincombe), and State Farm Mutual Automobile Insurance Company v. The Travelers Insurance Company, La.App., 184 So.2d 750 (State Farm).
In the Lincombe case, supra, our colleagues upon authority of Nationwide Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co. (N.D.W.Va.), 209 F.Supp. 83; Oregon Auto. Ins. Co. v. United States Fidelity & Guaranty Co. (9 Cir.), 195 F.2d 958; Bradshaw v. St. Paul Fire & Marine Insurance Company (Ga.), 226 F.Supp. 569, concluded clauses identical to those involved herein were mutually repugnant. The court held further that neither insurance was more "available" than the other therefore neither "other insurance provision" was effectuated by the other policy consequently both insurers were deemed primarily liable. Having reached this result, the court then prorated liability in accordance with mutual prorating provisions contained in each policy.
In the State Farm case, supra, our brothers of the Third Circuit reiterated the views expressed in Lincombe and reached the same result under an identical factual situation. In a concurring opinion rendered in State Farm, supra, Judge Tate acknowledged the decision rested upon the ruling in Lincombe which held "excess" and "escape" clauses mutually repugnant and canceled each other. On this premise he concluded the reciprocal pro rata clauses found in each policy were not repugnant but complementary and were therefore properly enforced. We share the opinion of our learned colleague, Tate, expressed in his aforesaid concurring opinion to the effect there appears no logical way to reconcile such clauses where each policy, standing alone, can afford primary protection but nevertheless contains a provision attempting to subordinate its liability to that of another primary insurer. Such is the situation in the case at hand.
We do not, however, concur in the view that the solution lies in the coverage extended by the policy viewed in the light of total policy insuring intent as determined by the risk or risks covered and premium charged. On the foregoing premise, Judge Tate reasons that such intent can best be determined by first resorting to the policy covering the vehicle involved on the basis that its contemplated use by the named insured and such omnibus insured as may use it, is more foreseeable than the infrequent use of a non-owned vehicle by the owner *77 or named insured of the vehicle not involved in the accident.
It appears the suggested solution depends upon which policy is resorted to first. It seems as logical to say that since the insurer of the non-accident involved vehicle intends to insure the named or omnibus insured operating another vehicle, under circumstances which may be totally unforeseeable, such coverage may be deemed to be primary because of its being virtually unlimited in scope. While the test suggested may be of some value in those cases wherein each policy insures an individually owned vehicle, it would, we believe, be without application in the case at bar inasmuch as Travelers is a garage policy having an entirely different basis from Trader's policy, the latter being a policy to an individual covering a particular vehicle. This difference, however, appears inconsequential considering Travelers' policy is one that affords primary protection but for the excess clause found in Traders' contract.
Readily acknowledging a degree of arbitrariness in our own reasoning, as will hereinafter appear, we concur in the result reached by our brothers of the Third Circuit in the Lincombe and State Farm cases, supra.
In our judgment double coverage policies providing primary protection attended by mutually repugnant "excess" or "escape" clauses must both be regarded as primary insurers on the theory that the clauses being irreconcilable must be deemed ineffectual. We so believe because we have found no decision and have been able to formulate no logically acceptable rule by which under such circumstances one policy may be deemed "other collectible insurance", thus giving effect to its "excess" or "escape" clause while at the same time the protection which it affords is held to not constitute "other collectible insurance" within the import of a similar provision of the policy with which it is confronted.
As suggested in the Minnesota Law Review Article, supra, and Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., supra, the most logical solution is one which achieves a most preposterous and inequitable result, namely, that literal application of the provisions of each double coverage policy be effectuated and both insurers relieved of liability. This would, of course, deprive the insured of protection, intended to be conferred, because of double coverage involuntarily resulting from the terms of a third party's contract of insurance with another insurer. This result we believe to be totally inequitable and indefensible in that it deprives the insured of protection intended to be afforded because of the existence of an independent and unrelated contract entered into by parties other than his own insurer and with whom the insured has no privity whatsoever.
Granted the solution reached may perchange produce results not intended by either or both insurers, nevertheless the insurers are in far better position to protect themselves from any resulting inequities than is the insured, who having obtained protection, is deprived thereof by the agreement of third parties whose covenants he cannot control. The insurer can adjust the terms of his policy to offset, reduce or minimize the effect of the inequity, if any; the insured can in no way control the contractual agreements of third parties.
Counsel for Travelers cites and relies upon a comment appearing in 27 Louisiana Law Review, page 114, in which the author criticizes the views of our brothers of the Third Circuit in the Lincombe and State Farm cases, supra. The author suggests error in the cited decisions on the ground the cases fail to distinguish between a "limited" and "unlimited escape clause." Without citing any authority as precedent, the author defines a limited escape clause as follows: "If any person, firm or corporation other than the named assured has valid and collectible insurance against any claim or loss, then such person, firm or *78 corporation shall not be covered under this policy." An unlimited escape clause is considered one which provides: "Any person other than the named insured using the automobile with the named insured's permission but only if no other valid and collectible automobile liability insurance either primary or excess is available to such person."
The foregoing is admittedly an application of the "specificity rule" which accords primary coverage to the policy most specifically covering the particular risk involved. We reject the argument as being one largely of semantics. In our judgment a clause using the phrase "other valid and collectible insurance" (without further qualification by way of either extension or limitation) is equally inclusive (or exclusive) as one which reads "other valid and collectible insurance either primary or excess." The only difference is the addition of two adjectives. The word "other" without qualification would, in the normal course of things, be taken to mean any other insurance of any kind whatsoever. While the ambit of the phrase "other collectible insurance" is not extended by adjectives to include specifically either primary or excess insurance, neither is its scope limited or restricted by excluding from its purview insurance either primary or excess. A literal application of the view advanced would require the finding that a policy reading "other valid and collectible insurance either primary, secondary or excess" be deemed more illimitable than one providing "other valid and collectible insurance either primary or excess" simply because of the addition of the extra adjective, secondary. The resulting staggering possibilities are at once apparent.
We conclude, therefore, the "excess" and "escape" clauses are mutually repugnant and consequently both rendered ineffective.
We note that both policies in question contain pro rata clauses limiting each insurer's liability to that proportion of the loss which the applicable limit of its liability bears to the total applicable limit of liability of all valid and collectible insurance. Under these circumstances we find that the trial court correctly apportioned liability in the manner indicated. State Farm Mutual Automobile Insurance Company v. The Travelers Insurance Company, La.App., 184 So.2d 750. We express no opinion regarding proper proportioning if, in a case similar to the one at bar, the policies did not contain mutual pro rata clauses.
The judgment of the trial court is affirmed at the cost of appellants, Traders and General Insurance Company and The Travelers Insurance Company.
Affirmed.