184 So.2d 750 (1966)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee-Appellant,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant-Appellee.
No. 1654.
Court of Appeal of Louisiana, Third Circuit.
March 22, 1966.
Rehearings Denied April 19, 1966.
Cavanaugh, Brame, Holt & Woodley, by Edmund E. Woodley, Lake Charles, for defendant-appellant-appellee.
Gist, Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, for plaintiff-appellee-appellant.
Before TATE, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
State Farm Mutual Automobile Insurance Company (State Farm) brought suit against The Travelers Insurance Company (Travelers), seeking to recover judgment for $2,109.35 that State Farm paid to third parties on behalf of its automobile liability assured.
Plaintiff's petition alleges that it had issued a policy of liability insurance to Hazel P. Grigsby on a 1959 Chevrolet automobile; that Mrs. Grigsby traded that car in on a new one; that while she was awaiting delivery of the new car, the dealer from whom she made the purchase loaned her a 1963 Ford automobile; that while using the loaned automobile, she was involved in an accident with certain third parties; that in a lawsuit arising therefrom, State Farm, Travelers and Mrs. Grigsby were made parties defendant; that State Farm negotiated a settlement of that suit with the plaintiffs therein, obtaining, in the process, an assignment of plaintiffs' rights as against Travelers and reserving the right to proceed against Travelers for *751 reimbursement or contribution; that Travelers was the liability insurer of the 1963 Ford and is, therefore, solely responsible for the damages sustained in the accident referred to, or alternatively, that it is responsible to State Farm for one-half thereof as a co-excess insurer.
Travelers answered the petition, denying any responsibility whatsoever.
Upon trial on the merits, the lower court gave judgment for State Farm against Travelers for one-half of the amount paid, as aforesaid, by State Farm.
Both companies have appealed from that judgment.
The issues thus presented are whether Travelers should be made responsible for some part of the amount paid by State Farm, and, if so, how much of it.
We have previously considered the first question in the case of Lincombe v. State Farm Mutual Automobile Insurance Company, (La.App., 3 Cir., 1964), 166 So.2d 920. For the sake of clarity, however, we will repeat the pertinent portion of that decision, beginning at page 925, as follows:
"The policy issued by State Farm contains the following provision:
"`* * * the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.'

"The insurance policy issued by Travelers, covering the 1963 Ford which was being driven by Mrs. Grigsby, defines an `Insured' under that policy as any person other than the named insured, while using an automobile covered by the policy with the permission of the named insured,
"`but only if no(t) other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limit specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person.'

"Each of these insurers, relying on the above quoted provisions of the policies, denies liability on the ground that the insurance provided by the other is available to Mrs. Grigsby. State Farm contends that it provides only excess coverage over and above that afforded by the Travelers policy. And Travelers contends that it provides no coverage because the insurance afforded by the State Farm policy is available to the insured.
"In our opinion there is no real difference between the quoted provisions of these policies. In each the purpose is to relieve the insurer from all or a portion of the liability which it otherwise would have if there is other valid and collectible insurance of the same type available to the insured. Actually, the insurance afforded by one of these policies is not any more `available' to the insured than is the insurance provided by the other. We think, therefore, that the `excess insurance' clause in the State Farm policy and the `other insurance' or escape clause in the Travelers policy are mutually repugnant to each other, and that insofar as the claim in this case is concerned those provisions of the policies are ineffective. See Nationwide Mutual Ins. Co. v. State Farm Mutual Automobile Ins. Co. (Md. W.Va.) 209 F.Supp. 83; Oregon Auto Ins. Co. v. USF&G (9 Cir.) 195 F.2d 958; Bradshaw v. St. Paul & Marine Insurance Company (Ga.) 226 F.Supp. 569.
"The Travelers policy also provides, with respect to a person occupying Mrs. Grigsby's position in this case, that the following `limits of liability' are applicable:
"I) The applicable limit of the company's liability shall be the amount by which (1) the applicable minimum limit of liability for bodily injury or property *752 damage specified in the financial responsibility law of the state in which the automobile is principally garaged exceeds (2) the sum of the applicable limits of liability under all the other valid and collectible insurance available to the insured, and
"`II) The insurance under this policy shall not apply to any loss with respect to which the insured has other valid and collectible insurance unless the total amount of the loss exceeds the sum of the limits of liability of all other policies affording such other insurance and the company shall then be liable, subject to clause (1) foregoing, only for the excess.'
"We have already pointed out that because of some mutually repugnant provisions of both insurance contracts, the insurance afforded by the State Farm policy is not any more `available' to the insured than is the insurance provided by Travelers, and for that reason these conflicting or irreconcilable provisions in both policies were held to be ineffective. For the same reasons we think the above quoted provisions of the Travelers policy are ineffective here insofar as they purport to reduce the liability of Travelers to a figure less than would be applicable if no other insurance at all was available to Mrs. Grigsby. In our opinion the last quoted provisions of the Travelers policy do not have the effect of relieving that insurer from liability in this case.
"We conclude, for the reasons herein set out, that Mrs. Grigsby is an `insured' under both the State Farm and the Travelers policies, and that under the facts and circumstances presented here both of these companies must be regarded as primary insurers of her in connection with the claim asserted by the original plaintiff in this suit. State Farm, as the assignee of the plaintiff, or as one of the two debtors who has paid the entire debt, is entitled to recover from Travelers, the other debtor, at least a portion of the amount which it was required to pay, provided, of course, that it is established that the insured is or would be liable for the damages allegedly sustained by Lincombe as a result of this accident."
It has now been established that the insured is liable for the damages sustained inasmuch as, at the time of trial of the instant case, the parties to this appeal stipulated that Mrs. Grigsby was legally responsible to the third parties involved in the accident referred to, and that the amount paid in settlement by State Farm was reasonable and commensurate with their damages.
The second issue for determination, then, is what portion should be assessed against Travelers. We have held in the Lincombe case, supra, that under the facts and circumstances, both companies must be regarded as primary insurers. The rule of apportionment thus applicable is that each company is liable in proportion to its respective policy limits where each policy so provides as in the instant case. Peterson v. Armstrong, (La.App., 3 Cir., 1965), 176 So.2d 453, and cases therein cited.
In the instant case, State Farm's policy limits are $10,000/$20,000; Travelers' limits are $5,000/$10,000. Thus, State Farm should bear twice the loss of Travelers, or conversely, Travelers should bear one-third of the loss rather than one-half.
Accordingly, the judgment of the lower court is amended so as to award judgment in favor of State Farm against Travelers for the sum of $703.12, and as amended, the judgment is affirmed. Costs of this appeal are assessed equally between the parties.
Amended and affirmed.
TATE, J., assigns additional concurring reasons.
*753 TATE, Judge (concurring).
This is a sequel to Lincombe v. State Farm Mutual Automobile Ins. Co., La.App. 3 Cir., 166 So.2d 920. There, in a suit by a party injured by the negligent driving of Mrs. Hazel Grigsby, we held that her driving of the car involved in the accident was insured by both State Farm and Travelers and that both insurers were primary insurers because the "excess" or "escape" clauses of both policies were mutually repugnant. See 7 Am.Jur.2d "Automobile Insurance", Sections 201, 202, for discussion of clauses.
If so, then our present majority opinion is correct in enforcing the respective pro rata "other insurance" provisions of both policies, which (after deleting the mutually repugnant "excess" or "escape" clauses) read in both policies to identical effect: "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss * * *."
These pro rata clauses in each policy are not repugnant to one another. We are therefore required to enforce them and allocate the liability in proportion to the policy limits, accepting as correct our original holding that both insurers are indeed primary insurers.
This is to be distinguished from a second type of situation where, by virtue of "excess insurance" clauses, two insurers provide coverage each of which is truly secondary or excess to insurance furnished by a third insurer. In this situation, the excess insurance clauses may be enforced as not being repugnant to one another, but the pro rata insurance clauses of the policies may be disregarded as intended to distribute the loss only between primary insurers, not between secondary (or true excess) insurers. In this event, the insurers will pay the loss equally until the lower policy limit is exhausted. Peterson v. Armstrong, La. App. 3 Cir., 176 So.2d 453.
Yet a third type of situation is presented when one insurer's coverage is determined to be primary and the other's merely excess. In this case, of course, the primary insurer is responsible for the loss up to its policy limits, and the excess insurer is liable only insofar as the loss exceeds such primary policy's limits or insofar as the loss is not collectible from the primary insurer. O'Brien v. Traders and General Insurance Co., La.App. 1 Cir., 136 So.2d 852, 865.
If in the present instance the issue were fresh presented to us without our prior adjudication in Lincombe, for reasons to be stated I believe we should have instead concluded that Travelers is the primary insurer primarily responsible and that State Farm is merely an excess insurer. That is, the present type situation should fall into the third type of situation (one insurer primary, the other excess) instead of the first (both insurers primary).
Our ruling in Lincombe essentially consisted of overruling a motion for summary judgment and remanding the case for further proceedings. The present appeal is a sequel. Since our ruling in Lincombe was interlocutory in nature, it is not res judicata between the parties; however, it does furnish the "law of the case" which ordinarily we (but not a higher court) must follow in subsequent proceedings. Keller v. Thompson, La.App. 3 Cir., 134 So.2d 395. Nevertheless, since our pioneer decision in Lincombe nearly two years ago in an issue which has become a matter of litigation only in recent years, further developments and clarification have taken place in the jurisprudence which seem to me furnish better reasons for allocating in a different manner the liability between two insurers in the Lincombe situation.
In Lincombe, we correctly held it was impossible to reconcile the respective "excess" and "escape" clauses in the two policies. Indeed, there is actually no way by *754 logic or word-sense to reconcile two such clauses, where each policy by itself can apply as a primary insurer, but where the clause in each policy nevertheless attempts to make its own liability secondary to that of any other policy issued by a similar primary insurer: For then the primary and (attempted) secondary liability of each policy chase the other through infinity, something like trying to answer the question: which came first, the chicken or the egg?
Nevertheless, although the respective clauses cannot be reconciled by word-logic, the respective policy coverages can be sensibly allocated in the light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy:
In each instance, this is primarily determined by the vehicle or vehicles of the accident-vehicle's owner, i. e., the named insured, and by the more foreseeable risks of insuring his actual or consented-to use of the vehicle or vehicles particularly insured. The policies are primarily (i. e., particularly or especially) issued to insure the maintenance, operation, or use of such specific vehicles by the owner or by others with his consent. The contemplated use of these vehicles, rather than of any non-owned vehicles incidentally or occasionally used, furnishes the most significant basis for the insurer's determination of the premium to be charged for the issuance of the policy.
By this view, therefore, under the present facts[1], Travelers should be held to be the primary insurer, since it issued the policy to the owner primarily and specifically to insure the operation of the Ford driven by Mrs. Grigsby. The Travelers "escape" clause is thus deemed inapplicable as not intended or else legally ineffective to exculpate it from the liability primarily insured by it. State Farm, on the other hand, would be an excess insurer; its insurance of Mrs. Grigsby's operation of a non-owned car is ancillary to its primary coverage of her operation of her old Chevrolet. Therefore, under the above circumstances, State Farm's "excess" clause is intended to make its own liability secondary to that of any primary insurer which has furnished valid and collectible insurance.
This is indeed the view of a strong majority of courts now whenever there is a conflict between "excess insurance" clauses under non-ownership coverage of a negligent driver's policy as against "other insurance" (whether excess, pro rata, or escape) clauses under the omnibus coverage of the vehicle-owner's policy. As summarized by the 1962 revision at 8 Appleman, Insurance Law and Practice, Section 4914, pp. 400-402, the majority rule is:
"* * * where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability. In such case, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It should be noted that under this rule, the courts give no application to the other insurance clause in the primary policy, which provides that if the additional insured has other valid and collectible insurance, he shall not be covered by the primary policy. *755 That is because the insurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted. Or, to put it another way, a non-ownership clause, with an excess coverage provision, does not constitute other valid and collectible insurance within the meaning of a primary policy with an omnibus clause."
The above rule have been applied in numerous cases, including the following: Olson v. Hertz Corporation, 270 Minn. 223, 133 N.W.2d 519 (1965); Motor Vehicle Casualty Co. v. LeMars Mutual Ins. Co., 254 Iowa 68, 116 N.W.2d 434 (1962); American Automobile Ins. Co. v. Republic Indem. Co., 52 Cal.2d 507, 341 P.2d 675 (1959); Mountain States Mut. Cas. Co. v. American Casualty Co., 135 Mont. 475, 342 P.2d 748 (1959); Ohio Farmers Insurance Co. v. Hoosier Cas. Co., 117 Ohio App. 507, 193 N.E.2d 153 (1963); London & Lancashire Ins. Co. v. Gov't Employees Ins. Co., 66 N. J.Super. 269, 168 A.2d 855 (1961); General Accident Fire & Life Assur. Corp. v. Piazza, N.Y.App., 4 N.Y.2d 659, 176 N.Y.S.2d 976, 152 N.E.2d 236 (1958); Farm Bureau Mutual Automobile Ins. Co. v. Motorists Mutual Ins. Co., 110 Ohio App. 12, 168 N.E. 2d 159 (1957); Allstate Insurance Company v. Urban, 15 Ill.App.2d 386, 146 N.E.2d 387 (1957); Continental Cas. Co. v. Owen, 90 Ga.App. 200, 82 S.E.2d 742 (1954); American Surety Co. v. American Indemnity Co., 8 N.J.Super. 343, 72 A.2d 798 (1950); Citizens Mutual Automobile Ins. Co. v. Liberty Mutual Ins. Co., U.S. 6 Cir., 273 F.2d 189 (1959); American Surety Company v. Canal Insurance Company, U.S. 4 Cir., 258 F.2d 934 (1958); General Insurance Co. of America v. Western Fire & Casualty Co., U.S. 5 Cir., 241 F.2d 289 (1957); Carolina Cas. Ins. Co. v. Pennsylvania Thresherman, U.S.W.D.Penn., 216 F.Supp. 325 (1963); and National Indemnity Company v. Lead Supplies, Inc., U.S.D.Minn., 195 F.Supp. 249 (1960).
Some cases are opposed to the above majority view. The leading case is Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., 219 Or. 110, 341 P.2d 110 (1959), modified on rehearing, 219 Or. 110, 346 P. 2d 643, 76 A.L.R.2d 483. In the Lamb-Weston case, the Supreme Court of Oregon criticized the majority view as being "circular" and stated:
"The `other insurance' clauses of all policies are but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an `escape clause') or that used by St. Paul (usually referred to as an `excess clause') or that used by Oregon (usually referred to as a `prorata clause'). In our opinion, whether one policy used one clause or another, when any come in conflict with the `other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto."
The Lamb-Weston case involved a conflict between an "excess" clause and a "pro rata" clause. However, proration has also been required when there was a conflict between "pro rata" clauses (Beattie v. American Automobile Ins. Co., 338 Mass. 526, 156 N.E.2d 49, 1959; Woodrich Construction Company v. Indemnity Ins. Co. of North America, 252 Minn. 86, 89 N.W.2d 412, 1958; Bituminous Casualty Co. v. The Travelers Ins. Co., U.S.D.Minn., 122 F. Supp 197, 1954), between "excess" clauses (Reetz v. Werch, 8 Wis.2d 388, 98 N.W.2d 924, 1959), and between an "excess" clause and an "escape" clause (Commercial Casualty Ins. Co. v. Hartford Accident & Indemnity Co., 190 Minn. 528, 252 N.W. 434, 253 N.W. 888, 1934; Oregon Automobile Ins. Co. v. United States Fidelity & Guar. Co., U.S. 9 Cir., 195 F.2d 958, 1952).
These views are presented for what assistance they may be to counsel or higher *756 tribunal in any further review of our decisions in these proceedings.
I respectfully concur.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] In the present case, Mrs. Grigsby negligently injured others while driving a 1963 Ford owned by the Sulphur Motor Company. The owner of this Ford had secured a policy from Travelers insuring its operation, which policy insured Mrs. Grigsby as an omnibus insured while driving the car with the owner's consent. This lady had just traded a 1959 Chevrolet to the Sulphur Motor Company; on the Chevrolet she had obtained a liability policy which insured her while driving it and also while driving a "non-owned" car. By reason of this "non-owned car" coverage, State Farm insured Mrs. Grigsby's operation of the 1963 Ford owned by the motor company.