FALTERSACK, Plaintiff, v. VANDEN BOOGAARD and another, Defendants: INTEGRITY MUTUAL INSURANCE COMPANY, Defendant and Respondent: IOWA NATIONAL MUTUAL INSURANCE COMPANY, Defendant and Appellant.*

*No. 261. Argued April 9, 1968.—Decided May 7, 1968.*
(Also reported in 158 N. W. 2d 322.)

* Motion for rehearing denied, with costs, on June 28, 1968.

66

"...

For the appellant there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner*.

For the respondent there was a brief by *William J. Stern* and *Swingen, Stern, Lenahan & Swanson,* all of Madison, and oral argument by *William J. Stern*.

HANLEY, J.   The question presented here is what effect the "other insurance" clause in each policy has on the ultimate liability, if any, for damages. Each company concedes that in the absence of the other's policy it would provide coverage for the injuries sustained by Faltersack.

Iowa National's position is that its "escape" clause was unambiguously drawn to exclude coverage in instances where another policy provides coverage, whether

by its terms the other policy is limited to excess coverage or not.

Integrity contends that its policy is not "other insurance" within the meaning of the Iowa National policy and that therefore it is liable only for damages in excess of the coverage in Iowa National's policy.

An insurance policy is a contract between the parties and the intention of the parties is the controlling guide in its interpretation.[1] Here the provisions of two separate and distinct contracts must be taken into account; and while the terms of a contract between different parties should not be allowed to affect the meaning of the language of a contract, the court should give effect to both, if that can reasonably be accomplished.

Of rivaling importance in this area of the law, because of the standard language frequently employed in insurance policies and because of the reliance factor, are the precedents of settled case law. However, counsel have not cited, nor have we been able to discover, a Wisconsin decision on the precise question here presented, although there are recent decisions of other jurisdictions.

Under the circumstances then the first objective is to determine under what conditions each policy provides coverage of the accident in the case at bar.

The Iowa National policy provides that the use by a customer of an automobile loaned by the garage to him is covered "only if no other valid and collectible automobile liability insurance . . . is available." The policy language does not stop there but enumerates both "primary" and "excess" insurance as "valid and collectible." By its terms, therefore, the "escape" clause of the Iowa National policy is made operative by the existence of

[1] *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 104, 130 N. W. 2d 185; *Home Mut. Ins. Co. v. Insurance Co. of North America* (1963), 20 Wis. 2d 48, 51, 121 N. W. 2d 275; *Siler v. Read Investment Co.* (1956), 273 Wis. 255, 77 N. W. 2d 504.

the "excess" coverage clause in the Integrity policy covering the same accident.

On the other hand, the Integrity policy provides that its coverage of an accident involving a nonowned vehicle shall be "excess insurance over any other valid and collectible insurance." In other words, if there is any other valid and collectible insurance covering the accident, Integrity will provide coverage only in the event the damages exceed the policy limits of the other policy. If there is no other valid and collectible insurance, Integrity's coverage in this matter is primary.[2] Since by its terms Iowa National's policy is not operative in the presence of excess coverage under another policy, Integrity's policy provides the sole coverage of the accident.

Similar reasoning has been adopted by other courts in identical fact situations. In *Government Employees Ins. Co. v. Globe Indemnity Co.*,[3] the Kentucky court stated the following:

> "To the extent that an 'escape' clause has been involved in the cases covered by the annotations above mentioned, in most instances the clause has been a *standard* one, simply negativing any liability if 'other valid and collectible insurance' is available to the driver. The distinguishing feature of the owner's policy in the instant case is that its 'escape' clause is *not standard;* it denies liability if other insurance, *either primary or excess,* is available to the driver. This means that the owner's insurer anticipated the possibility of the existence of an 'excess insurance' clause in the driver's insurance policy, and *expressly contracted* against liability in that situation. . . ."

In *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*,[4] a North Carolina decision, and in *Continental Casualty Co. v. Weekes*,[5] a Florida decision, similar views are expressed.

[2] *See Continental Casualty Co. v. Transport Indemnity Co.* (1962), 16 Wis. 2d 189, 196, 197, 114 N. W. 2d 137.

[3] (Ky. 1967), 415 S. W. 2d 581, 582.

[4] (1967), 269 N. C. 341, 152 S. E. 2d 436.

[5] (Fla. 1954), 74 So. 2d 367, 46 A. L. R. 2d 1159.

Integrity cites the Illinois decision of *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London* [6] in support of the proposition that the "excess" insurance it provided did not furnish "other valid and collectible insurance" within the meaning of the Iowa National policy. The facts of that case are similar to those of the case at bar: One Fiske was involved in an automobile accident while driving a rented automobile. His automobile liability insurance policy provided excess coverage while he was operating a nonowned vehicle, whereas the following language of the rental agency's insurance policy was applicable:

" '6. OTHER INSURANCE . . . If any person, firm, or corporation other than the Assured named in the Schedule is, under the terms of this policy, entitled to be indemnified hereunder and is also covered by other valid and collectible insurance, such other person, firm or corporation shall not be indemnified under this policy.' "

The court held as follows:

"The majority view seems more persuasive. We hold that the plaintiff extended its insurance to protect Fiske while driving the car involved in the accident with the permission of the named insured only for excess insurance over the valid collectible insurance available to him under the omnibus provision of the Lloyds policy. Lloyds does not escape through use of the clause denying liability if any person other than the named insured is also covered by other valid and collectible insurance, because plaintiff's policy was not 'other' insurance but rather 'excess' coverage. Since the liability limits of the Lloyds policy is in excess of the amount of damages, plaintiff's excess insurance never came into force. It did not furnish 'other valid and collectible insurance' and Lloyds must bear the entire amount of the damages and costs." [7]

---

[6] (1966), 34 Ill. 2d 424, 216 N. E. 2d 665.

[7] *Id.* at page 430. The case is a good illustration of what it states to be the majority view in dealing with "excess" clauses and "escape" clauses of the kind present in that case. *See also Zurich Ins. Co. v. Continental Casualty Co.* (1965), 239 Md. 421,

Without taking a position on the merits of the decision, we do not think the decision is applicable because the escape clause in Lloyds' policy did not specifically include "excess" insurance within the meaning of "other valid and collectible insurance." It is to be noted, however, that the decision was the result of an examination of the terms of the two policies.

Integrity also cites *Federal Ins. Co. v. Prestemon*[8] in support of its position. In that case, which involved two insurance policies whose applicable clauses corresponded exactly to those in the case at bar, the court held that the garage liability policy, with its "escape" clause, afforded primary coverage and that the automobile liability policy would provide excess coverage according to its terms. The court acted on the assumption that the clauses were repugnant and determined that the garage liability insurance was primary mainly because its premium reflected the greater contemplated exposure, the accident-involved vehicle was specifically covered in that policy, and because it was a business practice of the garage to loan vehicles for customers' use. The driver's automobile liability policy was characterized as being designed to protect against liability arising from ownership, mainte-

212 Atl. 2d 96; *American Surety Co. v. Canal Ins. Co.* (4th Cir. 1958), 258 Fed. 2d 934, 936; and *Zurich General Accident & Liability Ins. Co. v. Clamor* (7th Cir. 1941), 124 Fed. 2d 717.

A line of cases applying Oregon law has developed in which it has been held that policy clauses similar to those in the Illinois case are repugnant, with the result that the liability is pro-rated. The first case to so hold was *Oregon Automobile Ins. Co. v. United States Fidelity & Guaranty Co.* (9th Cir. 1952), 195 Fed. 2d 958. *See also Gilkey v. Andrew Weir Ins. Co.* (9th Cir. 1961), 291 Fed. 2d 132. In *Lamb-Weston, Inc., v. Oregon Automobile Ins. Co.* (1959), 219 Or. 110, 341 Pac. 2d 110, 346 Pac. 2d 643, although the conflict was between an excess and a pro rata clause, the court made the statement that any time two "other insurance" clauses come into conflict with each other they are repugnant and should be rejected in toto.

[8] (1967), 278 Minn. 218, 153 N. W. 2d 429.

nance, and use of a pleasure vehicle used for nonbusiness purposes.

Cited by the court as authority for its position were *Olson v. The Hertz Corp.*[9] and the concurring opinion in *State Farm Mut. Automobile Ins. Co. v. Travelers Ins. Co.*[10] *Olson* involved a clash between two insurance policies with excess clauses. One of the policies was issued to Hertz and the other to its employee who was driving a car owned by Hertz when it collided with another. In holding Hertz's insurer primarily liable, the court stated as follows:

"In our opinion, the determination of the trial court must be affirmed. Considered in its entirety, it is clear from the policy of insurance issued by Atlantic that it was obtained by Hertz for the principal purpose of protecting it and its employees from liability arising on account of its business operations. The vehicle which was involved in the accident is included within the description contained in the policy. The employees of Hertz are specifically embraced in the definition of insured. The accident here involved gave rise to a liability which the policy specifically covered. We take judicial notice of the fact that the standard premium for such a policy is, by comparison to the premium charged for policies issued with respect to private passenger automobiles, reflective of the greater contemplated exposure." [11]

In *State Farm* the applicable clauses of the two insurance policies were likewise identical to those of the case at bar, and the court found them repugnant. The majority concluded that in such a case neither provision would be given effect and prorated the coverage.[12] Con-

[9] (1965), 270 Minn. 223, 133 N. W. 2d 519.

[10] (La. App. 1966), 184 So. 2d 750.

[11] *Olson v. The Hertz Corp., supra,* footnote 9, at pages 226 and 227.

[12] In two subsequent decisions a different circuit of the Louisiana Court of Appeals has reaffirmed the decision in *State Farm.* The decisions are *Cotton v. Associated Indemnity Corp.* (La. App. 1967), 200 So. 2d 78, and *Graves v. Traders & General Ins. Co.* (La.

curring in the result because it stated the law of the case, Judge TATE stated that the total policy insuring intent could be determined by the vehicle or vehicles of the accident-vehicle's owner and by the more foreseeable risks of insuring his actual or consented-to use of the vehicles particularly insured. Thus he would have found the garage liability insurance to be primary coverage since it contemplated the instant use of the garage vehicle to a greater degree than the driver's liability policy contemplated his driving a nonowned vehicle.

Aside from the fact that the applicable provisions of the insurance policies in this case when properly construed are not repugnant, Wisconsin has disapproved the practice of determining which of two insurers is primarily liable when the applicable policy provisions are repugnant to each other. In *Reetz v. Werch* [13] a fact situation like that in *Olson* was presented. One Wendt was driving a tractor leased to his employer, to which was attached a trailer owned by his employer. Both the employer's and the lessor's insurance policies contained "excess" clauses. The court cited its opinion in *Ermis v. Federal Windows Mfg. Co.,* [14] holding that where the applicable provisions in two insurance policies provide excess coverage only, the liability should be prorated. The court then stated the following:

"Although the policies were of a different type and issued to named insureds who were differently related to the activities which allegedly gave rise to liability, we made no attempt to say that one policy was primary and one secondary, or to fix upon some other criterion for granting effect to the excess clause in one policy and denying effect to the excess clause in the other. As pointed out in *Oregon Automobile Ins. Co. v. United*

App. 1967), 200 So. 2d 67. A federal court has made a similar holding: *Employers Mut. Casualty Co. v. MFA Mut. Ins. Co.* (10th Cir. 1967), 384 Fed. 2d 111.

[13] (1959), 8 Wis. 2d 388, 98 N. W. 2d 924.

[14] (1959), 7 Wis. 2d 549, 97 N. W. 2d 485.

*States Fidelity & Guaranty Co.* (9th Cir. 1952), 195 Fed. (2d) 958, courts have used various criteria, *i.e.*, which policy was issued first, which policy was more specific, and which named insured was primarily liable. We agree with the court of appeals that each of these criteria is a 'relatively arbitrary circumstance.' . . .

". . . It is true that the two policies differ in the respects mentioned and others, but it seems to us more important that in drafting each policy, the parties contemplated a type of situation which was likely to arise where the operation of the vehicle would probably be covered by other insurance. In the Virginia policy, the parties contemplated a leasing of vehicles by the named insured to others, and in the Continental policy the parties contemplated the leasing of vehicles to the named insured. The specific situation contemplated in each policy has now come about. . . ." [15]

In *Lubow v. Morrissey*,[16] in which three insurance policies provided overlapping coverage, two of which contained applicable pro rata clauses and the third an excess clause, the court again restricted the basis of its decision to the probable intent of the parties. It concluded that the "excess" insurer's liability was contingent upon the noncollectibility of the full amount under the other two policies:

"In the Liberty Mutual policy before us, the excess clause does not apply to the coverage for which the policy was primarily written, and does apply only to certain types of coverage of automobiles not owned by the named insured. In such situations it is to be anticipated that there will be coverage under another policy issued primarily to provide such coverage. Apparently insurers frequently, if not ordinarily, intend to bear a greater responsibility where the coverage may be termed primary than that which they bear under other types of coverage, and the courts have considered that such usage itself provides a rational basis for giving an excess clause controlling effect in a conflict such as is presented here. . . ." [17]

---

[15] *Reetz v. Werch, supra,* footnote 13, at pages 392, 394.

[16] (1961), 13 Wis. 2d 114, 108 N. W. 2d 156.

[17] *Id.* at pages 123 and 124.

We conclude that since by its terms the Iowa National policy is not operative in the presence of excess coverage under another policy, such as Integrity's, Iowa National's motion for summary judgment should have been granted.

*By the Court.*—Order reversed with directions to enter a summary judgment on behalf of Iowa National Mutual Insurance Company.