**HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**FARMERS INSURANCE EXCHANGE, Appellee.**

**No. 183.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Jan. 15, 1969.

Rehearing Denied Feb. 12, 1969.

Frank M. Bean, Bean & Manning, Houston, for appellant.

Stephen A. Wakefield, Baker, Botts, Shepherd & Coates, Houston, for appellee.

SAM D. JOHNSON, Justice.

This is a controversy between two insurance companies, Farmers Insurance Exchange (Farmers) and Hardware Dealers Mutual Fire Insurance Company (Hardware), concerning the proper construction and application of their respective policies of automobile liability insurance.

Farmers had issued a standard Texas family automobile insurance policy with minimum liability limits on a 1964 pickup truck which John Baxter Hyde owned. With respect to a vehicle not owned by John Baxter Hyde, this policy provided liability coverage for him and for any relative who resided in his household. On October 26, 1966, Anita Kay Hyde (Hyde) was the daughter and a resident of the household of John Baxter Hyde. The "other insurance" provision of this policy[1] provided that with respect to a non-owned automobile, this policy "shall be excess insurance over any other valid and collectible insurance." This is generally known as an "excess" clause.

An "excess" clause is a standard provision of automobile liability insurance policies. By such clause there is a modification of coverage when any automobile other than the one specifically insured, e. g. a non-owned automobile, is being operated. That clause is here found in the policy of insurance issued to John Baxter Hyde by Farmers in its "other insurance" provision set out below.

Frizzell Pontiac, Inc., owned a 1966 Pontiac automobile which was being offered for sale to the general public. On the aforementioned date, October 26, 1966, Anita Kay Hyde appeared at the business premises of Frizzell shopping for an automobile and she was permitted to use this Pontiac automobile as a prospective purchaser. Thereafter, on this same date, while operating it within the scope of this permission she was involved in a collision with an automobile being driven by Hugo Teste in which Maria C. Teste and Maria E. Alvanez were passengers. As a result of the collision, Hugo Teste et al., instituted a suit against Anita Kay Hyde for damages allegedly resulting from the accident, which suit is presently pending in the District Court of Harris County.

An automobile garage liability policy had been issued to Frizzell Pontiac, Inc. by Hardware and was in full force and effect on October 26, 1966. Under the liabil-

[1] Other Insurance. If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.

ity provisions of this policy, Hardware insured any person against claims for bodily injury or property damage while using an automobile belonging to Frizzell with its permission. By a special endorsement[2] known as Form 53, Hardware purported to limit its coverage under certain circumstances, however. This endorsement contains what is generally known as an "escape" clause.

The instant litigation arose as a declaratory judgment action brought by Farmers. After agreeing upon all material facts through requests for admissions, the major litigants sought by motions for summary judgment a determination of their respective rights and responsibilities under the two separate liability insurance policies involved. The trial court ruled in favor of Farmers, decreeing that the appellant, Hardware, owed primary liability insurance coverage up to its policy limits, including the duty of defense, to Anita Kay Hyde. The policy of Farmers was decreed to be excess and not to come into effect unless and until the primary limits of the appellant Hardware's policy had been exhausted.

2. This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

In consideration of the reduced rate of premium made applicable to the insurance under Part I, it is agreed that the policy is amended as follows:

1. Paragraph 3 of "Persons Insured" is amended to read as follows, and Paragraphs 4 and 5 below are added, all subject to exceptions (i), (ii), (iii) and (iv) as set forth in the policy.

"(3) With respect to an automobile to which the insurance applies under paragraph 1(a) of the Automobile Hazards, any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission:

(a) any employee, director or stockholder of the named insured, any partner therein and any resident of the same household as the named insured, such employee, director, stockholder or partner.

(b) any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person; provided that with respect to Coverage C, such person shall be deemed to be a person for whom insurance is afforded, whether or not there is any other valid and collectible automobile liability insurance.

(4) With respect to an automobile to which the insurance applies under paragraph 1(b) of the Automobile Hazards, any person while using such automobile with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation of (if he is not operating) his other actual use thereof is within the scope of such permission.

(5) Any other person or organization but only with respect to his or its liability because of acts or omissions of the named insured within the Automobile Hazard or of an insured under paragraph (3) or (4) above."

2. Paragraph 1.(a), (b) and (c) of "Limits of Liability" under Part I is made subject to the following provision:

"Provided that with respect to a person described as insured under paragraph (3) (b) of Persons Insured and any person or organization legally responsible for the use of the automobile by such person, other than the named insured and any person or organization described in paragraph (3)(a) of Persons Insured,

(i) the applicable limit of the company's liability shall be the amount by which (1) the applicable minimum limit of liability for bodily injury or property damage specified in the financial responsibility law of the state in which the automobile is principally garaged exceeds (2) the sum of the applicable limits of liability under all other valid and collectible insurance available to the insured, and

(ii) the insurance under this policy shall not apply to any loss with respect to which the insured has other valid and collectible insurance unless the total amount of the loss exceeds the sum of the limits of liability of all other policies affording such other insurance and the company shall then be liable, subject to clause (i) foregoing, only for the excess."

It is not questioned that Farmers' policy applied to the collision in question or that Hyde was an "insured" thereunder. It is Farmer's position that because the vehicle operated by Hyde was a "non-owned automobile," its "other insurance" provision rendered its coverage "excess insurance."

Hardware on the other hand takes the position that its policy was inapplicable as to Hyde and that she was not an "insured" thereunder. Hardware reasons that Hyde had other valid and collectible insurance, either primary or excess, and that its Form 53 therefore, rendered its coverage inapplicable. The pertinent portion of the Form 53, Limited Coverage for Certain Insureds, is as follows: "With respect to an automobile to which the insurance applies * * * any of the following persons while using such automobile with the permission of the named insured * * * any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits * * * is available to such person."

We are therefore confronted with the "excess" clause of Farmers' policy and its position that its policy provides coverage above and "over any other valid and collectible insurance." We are also confronted with the "escape" clause of Hardware's policy and its position that it had no exposure in that there was other liability insurance coverage available either primary or excess.

Virtually all liability insurance policies contain provisions which attempt to delimit the available coverage in the event other insurance is available to the person purportedly insured. There are "pro rata" clauses which specify that coverage is to be pro-rated equally or on some predetermined basis. There are "excess" clauses which state, as Farmers' does here, that the policy shall be excess over the primary coverage of another policy. There are "escape" clauses which state, as Hardware's does here, that the policy shall be non-effec-

tive in the event of the availability of other insurance. Had there been only one policy, either Farmers or Hardware, there would be no problem about coverage. Either policy, in the absence of the other, would provide coverage up to the particular policy's limits. It is only when an alleged tort feasor has available two or more policies of liability insurance that disputes over concurrent coverage arise.

The problem may be resolved in various ways. First the "other insurance" provisions in each policy could be given full effect by declaring the other policy "other valid and collectible insurance." This would result in Hyde being left wholly without insurance coverage. This inequitable result is not reached by the courts, being contrary to both public policy and the intention of the parties. Second, give full effect to the "escape" clause of Hardware. This would eliminate Hardware from liability, would result in Farmers being liable, and provide no excess coverage for Hyde. Third, following the determination of the trial court, give full effect to the "excess" clause of Farmers. This would result in Hardware's being primarily liable and Farmers' liable for the excess. Fourth, coverage could be pro-rated between the two insurance carriers.

The "excess" clause is not new and has given rise to considerable litigation. This is, however, a case of first impression for the State of Texas. We are not without authority from other jurisdictions but it cannot be said to be either unanimous or conclusive. Some of this litigation has been, as here, between individual automobile liability insurance carriers and insurers providing automobile garage liability insurance.

The initial response to such litigation by carriers providing automobile garage liability insurance was the *general* escape clause, one designed to exclude from coverage persons who were "also covered by other valid and collectible insurance." Most courts, when confronted with a conflict

between an "excess" clause and a general "escape" clause, determined that the "escape" clause was not effective. Zurich Ins. Co. v. Continental Cas. Co., 239 Md. 421, 212 A.2d 96, (1965); New Amsterdam Cas. Co. v. Certain Underwriters at Lloyds, London, 34 Ill.2d 424, 216 N.E.2d 665, (1966). "* * * [T]he conflict has been resolved in the greatest number of cases by imposing liability on the insurer issuing the policy containing the 'no liability' clause. The rationale for this holding has been that the policy constituting 'excess insurance' only did not provide other collectible coverage so far as the 'no liability' clause of the other policy was concerned. This view is not subscribed to by all the courts, however, and it has been held that the conflict between such clauses is irreconcilable, and that therefore the insurers should be compelled to prorate the loss between them." 7 Am.Jur.2d, Automobile Insurance, Sec. 202; and see cases there cited. The proration of loss approach, however, has been used by a very limited minority of courts when faced with an "excess" clause of one policy conflicting with an "escape" clause of another. The leading case in this respect is Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 195 F.2d 958 (9th Cir., 1952). We are of the opinion that the better reasoned cases are represented by the majority view holding a *general* "escape" clause to be inapplicable when conflicting with an "excess" clause.

Here, however, appellant Hardware strongly urges that the instant "escape" clause is not general, but *specific*, and should be favored over the "excess" provision of Farmers. Its Form 53 expressly provides, contends Hardware, that its coverage shall not apply to any loss covered by other specified types of insurance including "excess insurance." Under the reasoning of Hardware there is no conflict between the two policies and the court need only literally apply both. In so doing, contends Hardware, Farmers' policy is "excess insurance" to no other valid and col-

lectible insurance, ergo "primary insurance." In support of this contention see Continental Cas. Co. v. Weekes, 74 So.2d 367, 46 A.L.R.2d 1159 (Fla.1954); Government Emp. Ins. Co. v. Lumbermans Mut. Cas. Co., 269 N.C. 354, 152 S.E.2d 445, (1967); Government Emp. Ins. Co. v. Globe Indemnity Co., 415 S.W.2d 581 (Ky. 1967); Faltersack v. Vanden Boogaard, 39 Wis.2d 64, 158 N.W.2d 322, (1968); Continental Cas. Co. v. Suttenfield, 236 F. 2d 433 (5th Cir. 1956); 46 A.L.R.2d 1168.

The reasoning given in support of Hardware's position is summarized in Faltersack v. Vanden Boogaard, supra. "Under the circumstances then the first objective is to determine under what conditions each policy provides coverage of the accident in the case at bar. The Iowa National policy provides that the use by a customer of an automobile loaned by the garage to him is covered 'only if no other valid and collectible automobile liability insurance * * * is available'. The policy language does not stop there but enumerates both 'primary' and 'excess' insurance as 'valid and collectible'. By its terms, therefore, the 'escape' clause of the Iowa National policy is made operative by the existence of the 'excess' coverage clause in the Integrity policy covering the same accident. * * *

"Since by its terms Iowa National's policy is not operative in the presence of excess coverage under another policy, Integrity's policy provides the sole coverage of the accident."

We are constrained, however, to a determination supported by what we believe to be the better reasoning and authority. It is in accord with the determination of the trial court. In the circumstances here presented we are of the opinion that the "excess" and "escape" clauses of the two policies cannot be reconciled. Each policy would apply as a primary insurer in the absence of the other yet attempts to make its liability secondary to that of any other policy issued by a similar primary insurer.

The fact that Hardware's specific "escape" clause enumerates particular types of insurance, including the "excess" insurance type, does not obviate the conflict. Farmers' policy is likewise specific in excluding primary coverage where "other valid and collectible insurance" exists. It cannot be doubted that it was the intent of Farmers' policy to exclude primary coverage in any such situation.

We find Judge Tate's concurring opinion in State Farm Mutual Auto Ins. Co. v. Travelers Ins. Co., 184 So.2d 750 (La.App. 1966) to be most persuasive. This case was a sequel to Lincombe v. State Farm Mutual Automobile Ins. Co., La.App., 166 So.2d 920, which was brought by one of the insurance companies to recover judgment for the amount paid in behalf of its insured. Both insurers in Lincombe were held to be primary insurers with respect to the automobile furnished to the driver by the dealer, rendering both insurers liable in proportion to their respective policy limits. Judge Tate's concurring opinion noted a growing development in the law since Lincombe relative to the apportionment of loss between insurers providing overlapping coverage whose policies contain conflicting provisions. He expressed the view that recent authorities furnished sound reasons for allocating liability in a manner different from that applied in Lincombe. Judge Tate recognized the hopelessness of any attempt to reconcile the various conflicting policy clauses where each company "attempts to make its own liability secondary to that of any other."

Judge Tate suggests what to our mind is the better approach of allocating the respective policy coverage in the light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums are based and as determined by the primary function of each policy.

"In each instance, this is primarily determined by the vehicle or vehicles of the accident-vehicle's owner, i. e., the named insured, and by the more foreseeable risks of insuring his actual or consented-to use of the vehicle or vehicles particularly insured. The policies are primarily (i. e., particularly or especially) issued to insure the maintenance, operation, or use of such specific vehicles by the owner or by others with his consent. The contemplated use of these vehicles, rather than of any non-owned vehicles incidentally or occasionally used, furnishes the most significant basis for the insurer's determination of the premium to be charged for the issuance of the policy * * * This is indeed the view of a strong majority of courts now whenever there is a conflict between 'excess insurance' clauses under non-ownership coverage of a negligent driver's policy as against 'other insurance' (whether excess, pro rata, or escape) clauses under the omnibus coverage of the vehicle-owner's policy."

Applying this reasoning to the instant case, Hardware, the insurer of the accident-involved automobile would be the primary insurer and Hardware's escape clause would be deemed "legally ineffective to exculpate it from the liability primarily insured by it." Farmers, on the other hand, would be an excess insurer; its insurance of Hyde's operation of a non-owned car is ancillary to its primary coverage of the operation of the Hyde pick-up truck.

We are of the opinion that this view is based on the better reasoned authority. Federal Ins. Co. v. Prestemon, 278 Minn. 218, 153 N.W.2d 429 (1967); Graves v. Traders & General Ins. Co., 200 So.2d 67, (La.App.1967); United Services Automobile Ass'n. v. Hartford Accident & Indemnity Co., 414 S.W.2d 836, (Tenn.1967). Decisions generally show favor of "excess" clauses and disfavor of "escape" clauses. Peerless Cas. Co. v. Continental Cas. Co., 144 Cal.App.2d 617, 301 P.2d 602, (1956), and we are of the opinion that this sentiment is justified even when the "excess" clause is specific.

The judgment of the trial court is affirmed.