**INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, a Corporation, Plaintiff-Appellee,**

v.

**Bonnie MITCHELL, Thomas P. O'Donnell, Administrator of the Estate of Viola Huckenstine, Deceased; Matthews Chevrolet Company; Michael Bresnahan; Allstate Insurance Company, Defendants-Appellants.**

**Nos. 17108–17110.**

United States Court of Appeals Seventh Circuit.

March 20, 1969.

Rehearing Denied May 1, 1969.

Sandor Korein, Bernard H. Bertrand, E. St. Louis, Ill., Jos. B. McDonnell, Belleville, Ill., Wagner, Conner, Ferguson, Bertrand & Baker, East St. Louis, Ill., for appellants.

William B. Wham, Robert H. Rath, Wham & Wham, Centralia, Ill., for appellee.

Before CASTLE, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

CASTLE, Chief Judge.

This declaratory judgment action [1] was brought to determine which of two insurance companies provided coverage to the driver of an automobile which was loaned by an automobile agency for the use of the driver while his car was being repaired. On September 13, 1963, while driving the automobile loaned to him by Matthews Chevrolet Company, Michael Bresnahan struck a bridge railing with the car, causing the death of one of his two passengers and injury to the other. The accident occurred in Illinois. The Chevrolet Company was insured by Indiana Lumbermens Mutual Insurance Company (Lumbermens) and Bresnahan was insured by Allstate.

Two state court suits were filed against Bresnahan and the Matthews Chevrolet Company. The first, filed by Bonnie Mitchell, the injured passenger, alleged that Bresnahan was willfully and wantonly negligent and that Matthews was negligent. Verdict and judgment were rendered against Bresnahan for $18,000 and costs, and verdict and judgment were rendered in favor of Matthews. The second suit was filed by the administrator of Viola Huckenstine, the passenger who was killed, and alleged similar conduct by Bresnahan and Matthews. That suit is still pending.

Although Lumbermens assumed the defense of Matthews in both cases, it refused, upon Allstate's demand, to defend Bresnahan on the ground that Bresnahan was not insured under its policy since he was covered by Allstate. Allstate then assumed Bresnahan's defense in both cases. The relevant clauses in the policies read as follows:

"ALLSTATE.

Limits of Liability:

  A) Bodily Injury Liability

  $10,000—each person

  20,000—each occurrence

PART I—Automobile Liability Insurance

Coverage A—Bodily Injury.

Coverage B—Property Damage.

Allstate shall pay for an insured all damages which the insured shall be legally obligated to pay because of:

A) Bodily injury sustained by any person, and

B) Injury to or destruction of property arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile.

Allstate shall defend any lawsuit, even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this policy, but may make such settlement of any claim or suit as it deems expedient.

\* \* \* \* \* \*

DEFINITION OF WORDS USED UNDER THIS PART

\* \* \* \* \* \*

2.a) Owned automobile means the vehicle described on the Supplement Page, and, as defined herein, any replacement automobile, any additional automobile, any temporary substitute automobile, and any trailer owned by the named insured;

\* \* \* \* \* \*

d) Temporary substitute automobile means any automobile, including a trailer, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

\* \* \* \* \* \*

If There is Other Insurance.

Allstate shall not be liable under this Part I for a greater proportion of any loss than the applicable limit of liability stated on the Supplement Page bears to the total applicable limit of liability of all collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or a non-

---

1. Jurisdiction is based on diversity of citizenship.

owned automobile shall be excess insurance over any other collectible insurance.

---

**INDIANA LUMBERMENS**

Limits of Liability:

$100,000—each person

300,000—each accident

\* \* \* \* \* \*

**PERSONS INSURED.** Each of the following is an insured under Part I, except as provided below:

1) The named insured

\* \* \* \* \* \*

In consideration of the reduced rate of premium made applicable to the insurance under Part I [Liability] it is agreed that the policy is amended as follows:

1. Paragraph 3 of "Persons Insured" is amended to read as follows \* \* \*

3. With respect to an automobile to which the insurance applies under paragraph 1(a) of the Automobile Hazards, any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

(a) \* \* \*

(b) Any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is primarily garaged, is available to such person. \* \* \*

Thus, each insurer has attempted to provide for liability only to the extent that "other insurance" is not available. It is uncontested that if either policy had not existed the other would have provided coverage. The presence of both, however, necessitates the inquiry as to which, if either, of the "other insurance" clauses is effective. The district court held that the Lumbermens policy "never came to life" by virtue of its terms, and therefore Allstate must bear, within the monetary limits of its policy, the entire loss. We agree.

Initially, we note that two possible solutions might be applied to this type of case. First, one or the other of the insurers may be held to bear the loss, depending on the language of the contracts. Second, both of the "other insurance" ("escape" or "excess") clauses may be held to be mutually repugnant and therefore ineffectual, and the loss may be apportioned between the insurers.[2] Although the latter approach recognizes that each company is attempting "to make its own liability category secondary to that of any other," and that such conflicts cannot, in reality be reconciled,[3] this approach has specifically been rejected by the Illinois Supreme Court in New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, 34 Ill.2d 424, 428–430, 216 N.E.2d 665 (1966). Therefore, under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L. Ed. 1188 (1938), we must here reject the second approach of apportioning the loss.

We must, then, examine the language used in both insurance contracts to determine which insurer should prevail. Allstate's policy provides for "excess insurance over any other collectible insurance." Lumbermens' policy provides for insurance coverage, "but only if no other valid and collectible automobile liability insurance, *either primary or excess* \* \* is available to such person. \* \* \*" (Emphasis supplied).

2. Among the cases so holding are: State Farm Mut. Auto Ins. Co. v. Traveler's Ins. Co., 184 So.2d 750 (La.App.1966); Oregon Auto Ins. Co. v. U. S. F. & G. Co., 195 F.2d 958 (9th Cir. 1953); Hardware Dlrs. Mut. Fire Ins. Co. v. Farmers Ins. Exch., 437 S.W.2d 390 (Tex. Civ.App., Jan. 15, 1969).

3. Hardware Dlrs. Mut. Fire Ins. Co. v. Farmers Ins. Exch., 437 S.W.2d at 395.

The emphasized language provides the crucial distinction between the instant case and New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, 34 Ill.2d 424, 216 N.E.2d 665 (1966), upon which Allstate heavily relies. In *New Amsterdam,* the garage owner's policy contained a general omnibus clause which was modified by an "escape" clause which provided that there was no insurance coverage when the insured driver was "also covered by other valid and collectible insurance." 34 Ill.2d at 426, 216 N.E.2d at 666. This clause was held to be ineffective as against the "excess" clause in the driver's policy, which latter policy was held not to have been "other valid and collectible insurance."

However, in the instant case, the garage policy of Lumbermens specifically excluded coverage when there was other valid and collectible insurance, "either primary or excess." It is this specific inclusion of "excess" insurance within the meaning of "other valid and collectible insurance" which relieves Lumbermens of any obligation to defend or indemnify Bresnahan. We note the following cases which have reached the same result in dealing with almost identical factual situations: Allstate Insurance Company v. Shelby Mutual Insurance Company, 269 N.C. 341, 152 S.E.2d 436 (1967); Government Employees' Insurance Company v. Lumbermens Mutual Casualty Company, 269 N.C. 354, 152 S.E.2d 445 (1967); Faltersack v. Boogaard, 39 Wis.2d 64, 158 N.W.2d 322 (1968).

This conclusion is bolstered by the fact that the portion of the Lumbermens policy containing the above language was included "[i]n consideration of the reduced rate of premium." Such reduced rate and the policy changes effected thereby demonstrate that Matthews Chevrolet contracted not to furnish liability coverage for a customer while he was driving a loaned car when he had his own automobile liability insurance. As we recently said in Chicago Terminal Clearance v. St. Paul Fire and Marine Insurance Company, 407 F.2d 552, page 554 (7th Cir., Feb. 14, 1969), "Therefore, the conclusion we reach is not only dictated by the language of the contract but has a reasonable basis in fact."

Since the above holding disposes of the controversy in this case, the judgment below is affirmed.

Affirmed.